### THOMAS HOGAN & SONS, Inc., v. KILLEEN.

(Circuit Court of Appeals, Third Circuit. May 19, 1920.)

No. 2536.

**Master and servant ☞278(17)—Finding of negligent failure to warn longshoreman of method of loading held warranted.**

Evidence *held* to support a finding that the method of dumping pig iron from the bucket into the hold of a ship before the bucket reached the floor, by which libelant, an experienced longshoreman, was injured when the first bucketful was dumped, was unusual and dangerous, and that failure to warn libelant of the use of such method was negligence, which rendered the employer liable for the injury.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit in admiralty by John Killeen against Thomas Hogan & Sons, Incorporated. Decree for libelant, and respondent appeals. Modified and affirmed.

Runyon & Autenrieth, of Jersey City, N. J., for appellant.

Alexander Simpson and George Cutley, both of Jersey City, N. J., for appellee.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. John Killeen, an employé of the appellant, was injured while assisting in the loading of a vessel. Alleging that his injuries were the result of negligence on the part of his employer, he brought suit on the admiralty side of the court below to recover damages therefor, and was awarded a decree. It is contended on behalf of the appellant that the finding that there was negligence on its part was contrary to the clear weight of evidence and that the damages awarded to Killeen are excessive. Those are the only grounds relied upon for a reversal or modification of the decree below.

Although possibly not strictly in accordance with the issues framed by the pleadings, the case was tried by both parties on the theory that the appellant's negligence, if any, consisted in setting the plaintiff to work in loading pig iron in the hold of a vessel without warning him that the method of dumping the bucket that carried the pig iron, which was being followed, was not the one customarily and ordinarily used in and about New York Harbor, where the vessel in question was moored, but, on the contrary, was an unusual and dangerous one. Killeen was injured early in the morning, and during the dumping of the first bucket load of pig iron which was lowered into the hold of the vessel after he had begun work. There is no pretense that he was warned or notified that it was intended that the bucket should be dumped in the way that it was. Killeen, however, was an experienced longshoreman, and if that method of dumping was the customary and usual one, he must be presumed to have been cognizant of it, and of the dangers incident thereto. In that event, under the circumstances of this case, he would not be entitled to recover. On the other hand, if the method employed was an unusual and dangerous one, it was undoubtedly negligence, for which the appellant is liable, to have failed to notify or warn him thereof. Consequently the decisive issue of fact was whether that method was the customary one, or was an unusual and dangerous one.

The bucket was designed, on the tripping of a latch, to dump itself while suspended in the air and without having rested on the floor, and after discharging its load to return in place automatically It was so operated when Killeen was injured. He and three witnesses produced by him, who were working in the hold of the vessel and were likewise experienced longshoremen, testified that the usual method of unloading buckets in the holds of vessels, and in fact the only method which they had ever seen employed in work of a similar character, was to land the bucket on the floor, transfer the cable, to which it was attached, from the bale to the handholds on the rear of the bucket near the bottom, and then to cause the cable to be lifted by the steam winch or other source of power sufficiently to permit the bucket to be partially overturned, and thus dump its load without being materially, if at all, raised from the floor. The effect of the evidence of the appellant's witnesses (three in number) was, on the contrary, that the usual method was that for which, as before stated, the bucket was designed, re-

ferred to in the evidence as dumping "on the fly." Two of these witnesses were manufacturers of buckets similar to that in use when the accident happened, and their testimony was that they had never seen that kind of a bucket used in the way that Killeen and his witnesses testified. The testimony of appellant's other witness, who was the foreman in charge of the work, and who had employed Killeen, was that the method of dumping "on the fly" was the customary one. But it is entirely evident from his testimony that there was a marked disposition on the part of longshoremen to use the other method, and that they did so unless prohibited.

It is argued with much force on behalf of the appellant that it is improbable to believe that a bucket, constructed and designed for dumping while sustained in the air, and unsuited for dumping in the way in which Killeen and his witnesses testified was the customary way, would ever be used in the latter way, and that this improbability, taken with the other evidence, so clearly outweighs the testimony produced on behalf of Killeen as to require us to reverse the decree. It would indeed be difficult to understand why that method would be generally and customarily followed, involving as it must damage to the bucket, considerable loss of time, and more labor than if the bucket were operated as it was intended and designed to be operated, were it not for the fact that dumping "on the fly" was unquestionably attended with dangers to those engaged in the operation. This latter consideration could quite easily account for the fact that longshoremen ordinarily used the other method, especially when unloading such material as pig iron.

Moreover, we think that Killeen's version of exactly how the accident happened tends to bear out his contention that the customary way of dumping was as he and his witnesses testified. It seems unreasonable to believe that he would have been in the position in which he was when he was injured, if he had expected the bucket to be dumped "on the fly." Thus it appears that the finding of the learned trial judge that the method of dumping which was followed on this occasion was unusual and dangerous has ample evidence to support it, and that such evidence is not so opposed to the probabilities as to be considered incredible. In such a situation, as he saw and heard the witnesses and was thus in a position to properly appraise their testimony, manifestly we would not be justified in holding that he erred in his finding. We are of the opinion, however, that the damages awarded are excessive, and that libelant will be properly compensated if he receives $2,000.

Accordingly, the decree, so modified, will be affirmed, with costs to the appellee.